283 So.2d 799 (1973)
Paul KILLIAN et ux., Plaintiffs-Appellants,
v.
C & H TRANSPORTATION COMPANY, INC., et al., Defendants-Appellees.
No. 12122.
Court of Appeal of Louisiana, Second Circuit.
September 11, 1973.
*800 Johnston & Johnston, by James J. Thornton, Jr., Shreveport, Henri Loridans, Bossier City, for plaintiffs-appellants.
Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Shreveport, for J. L. Dollar and C & H Transportation Co.
Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for State Farm Mutual Auto. Ins. Co.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
This appeal arises out of the collision of a truck and passenger car at the intersection of Louisiana Highways 1 and 169 just south of Oil City, Louisiana, on January 27, 1970, at 8:00 o'clock, A.M.
Plaintiffs, Mr. and Mrs. Paul Killian, were riding as passengers in their 1968 Chevrolet Malibu being driven by their 20 year old daughter, Suzanne Lindsey. The Killian automobile was traveling south on Highway 1, a paved concrete highway running generally north and south. James Leon Dollar was driving a 55 foot tractor-trailer easterly on Highway 169. At the intersection of Highway 169 with Highway 1, Dollar intended to turn left and proceed north on Highway 1 to Vivian. While engaged in making this turn Dollar's tractor-trailer was struck on the left rear tire by the Killian automobile. The automobile ran off the highway into the ditch on the west side of Highway 1, causing minor damage to the vehicle and the personal injuries to Mr. and Mrs. Killian which are the basis of this action.
*801 Plaintiffs alleged Dollar was negligent in driving his truck into the intersection in the path of their automobile which was accorded the right-of-way by law, and that this negligence was the sole cause of the accident.
Primary defendants named in the action are the truck driver, James Dollar, and his employer, C & H Transportation Company, Inc.
Alternatively, plaintiffs seek judgment against State Farm Mutual Insurance Company, the liability insurer of their automobile, in the event the court finds Dollar was free of negligence and that the accident was caused solely by the negligence of Suzanne Lindsey. Defendants, C & H Transportation Company, Inc., and Dollar, denied plaintiffs' allegations against Dollar, contending that at the time he drove into the intersection the Killian vehicle was not within view and that Mrs. Lindsey had ample time to have avoided the collision after seeing the truck in her path had she exercised proper control over her automobile. State Farm denied the plaintiffs' alternative allegations of negligence against Mrs. Lindsey and contend the sole proximate cause of the accident was Dollar's negligence in failing to yield the right-of-way to the favored thoroughfare.
After trial on the merits, the trial judge found the accident was caused solely by the negligence of Mrs. Lindsey and awarded judgment for plaintiffs against State Farm, as follows:

1. For personal injuries to Mrs.
 Sue Killian $6,000.00
2. For personal injuries to
 Paul Killian 500.00
3. Medical expenses paid by Paul
 Killian as head and master of
 the community 1,793.00
4. Automobile damages to Paul
 Killian not covered by
 collision policy 100.00

The demands against C & H Transportation Company and Dollar were rejected.
Plaintiffs perfected this devolutive appeal, contending the trial court erred in absolving Dollar from fault and finding the sole cause of the accident was the negligence of Mrs. Lindsey. Plaintiffs also request an increase in the amount awarded by the trial judge for personal injuries.
We affirm the judgment appealed from.

NEGLIGENCE
The resolution of the question of fault on the part of either of these drivers in causing the injuries to the plaintiffs herein depends primarily on the factual issue as to the distance the Killian vehicle was from the intersection when Dollar proceeded to enter the favored highway and the determination of whether each driver observed the standard of care imposed on him by law under the circumstances confronting him.
It is undisputed that Highway 1 (on which plaintiffs were traveling) is accorded the right-of-way by law over traffic crossing or entering it from Highway 169. This preference is indicated by a stop sign and an overhead blinker light flashing red to traffic on Highway 169. The overhead signal also flashes amber to traffic on Highway 1 indicating vehicles should proceed with caution into the intersection (LSA-R.S. 32:234). To the north of this intersection Highway 1 is straight for some distance and gradually inclines to the crest of a hill some 1,800 feet north of the intersection.
The drivers of the vehicles gave conflicting testimony at the time of trial as to how the accident happened. Dollar testified he stopped prior to entering the intersection to allow one or more cars to pass on Highway 1. He then looked in both directions and seeing no vehicles in sight began slowly crossing the west lane of Highway 1. His unusually slow rate of speed (5 to 9 mph.) was caused by a 38,000 pound load of steel frames on the trailer. As his tractor neared the center line of the two-lane highway, he saw the Killian vehicle at an estimated distance of approximately 1,800 feet near the crest of the hill. *802 He estimated its speed at a rate of approximately 65 mph. The vehicle continued toward him at about the same rate and there was no indication of an attempt by its driver to slow the speed of the vehicle until it was close upon him, at which time she swerved to the right. He at no time detected an application of brakes by the other driver. He testified he had cleared all but approximately two feet of the southbound lane prior to the collision, but due to the heavy load on the trailer and its overall length, he was unable to completely clear the west lane prior to the arrival of the Killian car.
Mrs. Lindsey testified at the time of trial that when she was approximately one block (300 feet) from the intersection the truck began moving from a stopped position into her lane of traffic. She also testified she applied her brakes lightly when she first noticed the truck, but assumed he would clear her lane prior to her reaching the intersection.
Mrs. Lindsey's testimony at time of trial is contradictory to a signed statement she admittedly gave to an insurance adjuster the day after the accident. In this statement she declared she first noticed the truck as she came over the hill to the north of the intersection and at that time it was just pulling out into Highway 1. Although counsel for State Farm attacks the reliability of an oral narration by a witness recorded by an insurance adjuster in words reflecting his own interpretation of what the witness actually said, which may cause a distortion of the meaning intended by the witness, we do not find any circumstances surrounding the taking of the statement from this witness or an ambiguity in its phraseology which would justify our refusal to give it proper consideration.
The testimony of plaintiff, Paul Killian, depicts the Killian vehicle at approximately 100 yards from the intersection when the truck began slowly moving out into Highway 1, attempting a left turn. He also testified at the time of trial that his daughter made a positive application of brakes at the time the truck began entering the highway. Not only is his testimony regarding application of brakes contrary to his daughter's testimony, but it is inconsistent with a written statement made by Killian the day following the accident. In that statement Killian clearly declared he did not know whether his daughter ever applied her brakes.
The other passenger, plaintiff Mrs. Sue Killian, was reading at the time of the accident and could give no information on the cause of the accident.
The trial judge apparently found the version of the accident as described by the truck driver, Dollar, to be supported by the evidence and we are in accord with his finding.
At the time Mrs. Lindsey topped the crest of the hill she saw, or should have seen, the flashing amber light indicating to her she should proceed with caution into the intersection some 1,800 feet from her. She admitted in her statement made the day after the accident that as she came over the hill she saw the tractor-trailer then pulling into the intersection from a stopped position. Had she used the degree of care required by LSA-R.S. 32:234 in approaching the intersection, the collision should have been avoided. Pedersen v. Schenck, 204 So.2d 316 (La.App. 1st Cir. 1967). We think her assumption that the truck would clear her lane prior to the time she reached the intersection was not reasonable under the circumstances confronting her, and her failure to bring her vehicle under proper control to avoid the hazardous situation facing her was the proximate cause of the accident.
We find no error in the trial judge's conclusion that Dollar was free of negligence under the circumstances presented. The responsibility of a motorist facing a stop sign is defined in LSA-R.S. 32:123. This section of the traffic regulatory law, after providing for the motorist *803 to stop in compliance with the sign, further provides "the driver shall yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard."
The evidence shows that at the time Dollar entered the intersection he could reasonably believe he could complete his turn without endangering any vehicle traveling on Highway 1. Although he could not see what vehicles, if any, might be approaching from the north on the opposite side of the incline, he could reasonably assume that because of the distance between the intersection and the crest of the incline any approaching driver from that direction exercising proper control over his vehicle would not be endangered and would not be required to make an emergency stop to avoid striking his slow moving truck.
Appellants and State Farm contend the trial judge applied the doctrine of last clear chance in holding Mrs. Lindsey at fault in the accident and that the doctrine may not be invoked as against guest passengers. From our interpretation of the trial judge's reasons for judgment, he made a primary finding that Mrs. Lindsey was negligent and her negligence was the sole cause of the accident. He made a positive finding that Dollar was free of negligence. Therefore, his subsequent mention of last clear chance was an alternative finding only and not intended to modify his primary conclusion on negligence of either driver. As we are in accord with the finding that Dollar was not negligent, we do not therefore find it necessary to discuss the application of this doctrine to the circumstances of this case.

QUANTUM
Although plaintiffs have asked for an increase in the awards to both plaintiffs, no real issue is made as to the sufficiency of the award for Mr. Killian's injuries. He was awarded $500 for a small abrasion on his right leg and a complaint of slight soreness in his back which was relieved by muscle relaxants. His only medical treatment was very casual and consisted of two consultations with the physician treating his wife while Killian was visiting with her in the hospital. There is no manifest error by the court in awarding this amount for this very minimal injury.
Plaintiffs contend the award of $6,000 for the injuries received by Mrs. Killian is so inadequate as to constitute an abuse of the discretion vested in the trial court in determining awards for personal injuries. Defendants, C & H Transportation Company and Dollar, contend the amount awarded is excessive and should be reduced in the event they are cast for any portion of the judgment by this court. State Farm makes no issue as to the excessiveness of the award and the record shows a tender was made by it to plaintiffs for payment of the judgment prior to the perfection of the appeal.
As a result of the accident Mrs. Killian sustained a compression fracture of the second lumbar vertebra. She was hospitalized from January 27, 1970 (the date of the accident) until February 13, 1970. Dr. Harold Bicknell, an orthopedic surgeon who treated Mrs. Killian, testified he prescribed medication for pain and fitted her with a hyperextension back brace. During her first few days of hospitalization she developed an ileus, which subsided with proper treatment after a few days. Approximately three days after her discharge on February 13th, she returned to the hospital overnight for further examination after suffering increased pain after twisting her back while bending. Dr. Bicknell further testified that she returned to his office periodically during June, July and August of 1970, with complaints of pain in varying areas of her back. She also had complaints of abdominal and chest discomfort, for which she was instructed to consult her family physician. Dr. Bicknell instructed *804 Mrs. Killian to begin to go without her brace for increasing periods of time in July. On December 30, 1970, he examined plaintiff and found her fracture to have completely healed and discharged her with an estimated disability of ten percent of the body as a whole. Dr. Bicknell last examined plaintiff on November 10, 1971, for a complaint of pain in the back area after an automobile trip. In his opinion any complaints of pain at this date were musculoligamentous in origin and not as a result of the injury. His testimony shows the healed fracture has caused a slight deformity of the involved vertebrae which might cause an earlier onset of degenerative changes than would otherwise be expected. However, any limitation of activity involving use of the back would relate only to a backward flexion and would not retard forward flexion. Dr. Bicknell was further of the opinion this condition would not prevent Mrs. Killian from engaging in normal activities. He also testified most of her present complaints of intermittent pain relate to preexisting osteoporosis which was not aggravated by trauma and did not result from her injury.
Dr. Baer I. Rambach, who examined Mrs. Killian in April, 1971, gave testimony consistent with that of Dr. Bicknell.
The testimony of Mrs. Killian, members of her family and several corroborating lay witnesses describes her as a very active person prior to the accident, doing many things that required considerable physical exertion, which she can no longer do because of pain in her back which has continued through the date of trial.
We do not consider this lay testimony to overcome the positive conclusions of the medical experts who treated Mrs. Killian, particularly when there is no contradictions in their opinions.
Although it may well be argued that the award to Mrs. Killian is somewhat modest for such an injury and recuperative period as endured by her, we cannot say that it is so inadequate as to constitute an abuse of the discretion accorded the trial court within the principles of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) and related cases.
For the foregoing reasons the judgment appealed from is affirmed at appellants' costs.