CHEHARDY, Judge.
Plaintiffs, Corneluis Enclarde and Sidney Williams, appeal a trial court judgment in favor of defendant Charles H. Christen, III, dismissing the plaintiffs’ case at their costs.
Judgment was also rendered regarding a consolidated case in favor of plaintiff Charles H. Christen, III, and against defendants, Louis Roach and American Fidelity Fire Insurance Company, jointly and in solido, in the sum of $100, together with legal interest from the date of judicial demand, until paid, and for all costs of the proceedings; and in favor of plaintiff, Hanover Insurance Company, and against defendants, Louis Roach and American Fidelity Fire Insurance Company, jointly and in solido, in the full and true sum of $1,057.50, together with legal interest from the date of judicial demand until paid, and for all. costs.
This case involves a collision between two vehicles which occurred on St. Bernard-Highway on the evening of December 26, 1976. The plaintiffs were passengers in a Ford operated by Roach, which was struck on the left rear side by a Chevrolet owned and driven by Christen and also occupied by his girl friend Darlene Couture, who, at the time of trial, was then married to Christen. Christen’s vehicle was damaged on the right front fender and bumper.
Although no reasons for judgment were given by the district court judge, it is apparent that he found the plaintiffs were negligent in causing the accident, and the defendant Christen was free from negligence or that any negligence he might have been guilty of was not a proximate cause of the accident. Such a conclusion is one of fact on the part of a trial court judge, as are his evaluations of credibility when there is conflicting testimony, and an appellate court cannot disturb such conclusions in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In the present case the defendant Christen testified he was 11 or 12 car lengths away from the Roach vehicle when he first noticed it ahead, traveling in the same direction as his car on the shoulder of the highway. Christen further testified that when he was approximately three or four car lengths away from the other automobile, it pulled out into the highway and, although he hit his brakes, he had “no alternative but to hit him.”
Christen also said it had been raining that night, that he was proceeding within the speed limit (at approximately 35 to 40 miles per hour), and that he blew his horn several times when he first noticed the Roach vehicle on the shoulder of the road.
George Estopinal, a passenger in a vehicle which was traveling in the opposite direction as the cars involved in the collision, said when he first saw both vehicles one was on the shoulder of the highway and that the latter vehicle entered the roadway in front of the other car, the collision then occurring “momentarily.” He added that Christen’s automobile was no farther than 15 feet away from Roach’s vehicle when the Ford came onto the highway. Both Christen and Estopinal also testified that some portion of Roach’s car was still on the shoulder of the highway at the time of impact.
Miss Couture also confirmed the testimony of Christen and Estopinal, stating the defendant was traveling at approximately 35 to 40 miles an hour when she and Christen first noticed the Roach vehicle a block ahead moving along the right hand shoulder of the highway. She added that when they were only two car lengths away from the other vehicle it began moving slowly into the street, and the collision occurred a few seconds later. She also said, as did Christen, that he had begun blowing his horn as soon as he spotted the other vehicle on the shoulder of the road.
Totally different versions of the accident, however, were given by Enclarde and Wil- *857 Hams, passengers in the Roach car. En-clarde said the Roach vehicle was completely on the highway before the accident occurred, that the Ford was struck on the rear and that it was stopped and getting ready to make a left-hand turn at the time of impact. He also said he heard no horn blowing prior to the crash. In recounting the stops that had been made by his party before the accident, Enclarde also told of having consumed at least six beers and said Roach had also drunk six to eight beers.
Williams, on the other hand, testified the Ford in which he was traveling was “just about to stop to make the left turn” when the accident occurred and that the vehicle was completely on the highway in its lane of traffic for three or four minutes before it was struck in the back by the other car.
In reviewing the testimony of the above parties in its entirety, we cannot find the district court judge was in manifest error in giving more weight to the account of the accident given by Christen, Couture and Estopinal, rather than that given by Enclarde and Williams, nor can we conclude he erred in concluding that the negligence of the driver of the vehicle in which the plaintiffs were riding was the sole proximate cause of the accident rather than any negligence on the part of Christen.
Neither can we find merit in plaintiffs’ assignment that the trial court erred in not allowing an oral statement given by Christen to his own insurer into evidence for purposes of credibility. The cases cited by plaintiffs in support of this contention dealt with situations where the statement was given to the opposing party's insurance company (Galiano v. Ocean Accident & Guarantee Corporation, 55 So.2d 641 [La.App. Orl. 1951]), or where it was impossible to tell from a reading of the case exactly to which party’s adjustor the statement had been given (April v. Millers Mutual Fire Insurance Co. of Texas, 273 So.2d 50 [La.App. 4th Cir. 1973]; Killian v. C & H Transportation Company, Inc., 283 So.2d 799 [La.App. 2d Cir. 1973]) or which concerned a prior statement made by a witness who was not a party to the suit (Schexnayder v. Zurich Insurance, 257 So.2d 764 [La.App. 1st Cir. 1972]).
In the present case, however, the statement was one of a party given to his own insurer prior to trial, and we find the most applicable law regarding its admissibility in Bordelon v. Phoenix Insurance Company, 244 So.2d 919 (La.App. 1st Cir. 1971), wherein the court said at pages 921-922:
“Plaintiffs further contend that they were prejudiced at trial by the refusal of the trial judge to compel production by defendants of a written statement given by Miss Efferson to Phoenix a few days after the accident. The request was made for the first time in the waning stages of the trial when Miss Efferson' was called on cross-examination by plaintiffs and she admitted having given such a statement. They rely on La.C.C.P. Art. 1492, relative to depositions and motions for discovery and production of documents. The pertinent part of that Article reads as follows:
‘Upon motion of any party showing good cause therefor, and subject to the provisions of Article 1452, the court in which an action is pending or in which the judgment was originally rendered may:
(1) Order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Article 1436 and which are in his possession, custody, or control; * * *’
“The defendants contend that the statement in question is privileged under La.C.C.P. Art. 1452, which restricts Article 1492 and the pertinent part of which reads as follows:
‘Art. 1452. Orders for the protection of parties and deponents
< sjc * *
*858 ‘The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or' will cause him undue hardship or injustice. * * *’ "
“However, we are of the opinion that the privilege of Article 1452 does not become an issue unless and until a proper and timely request for the document has been made. Indeed, under Article 1492, the moving party must show good cause for requiring the production of a document held by an adverse party and the granting of such a motion is within the discretion of the trial judge by the very language of the Article. Even if plaintiffs’ request for the statement during the cross-examination of Miss Efferson may be construed as a motion to compel production, and without deciding whether such a motion is necessarily a pre-trial discovery device or contradictory in nature, the only reason for plaintiffs’ request was simply the apparent hope that Miss Efferson’s prior statement would not be entirely consistent with her testimony at trial. Inasmuch as the trial judge described her as a sincere and credible witness and found that the physical evidence supported her testimony, it is clear that the judge did not share that suspicion and did not consider that good cause had been shown for compelling the defendants to produce the prior statement. We cannot say that a denial of the request under these circumstances constituted an abuse of the discretion vested in the trial judge by C.C.P. Art. 1492.”
Similarly in the present case, we cannot find the district court judge’s refusal to admit the prior statement of Christen to be an abuse of discretion on his part and, therefore, presents no grounds for reversal or remand.
For the reasons expressed herein, the trial court decision is affirmed.

AFFIRMED.