HOOD, Judge.
Edgar R. Jordan instituted this suit to recover damages for personal injuries sustained by him when a bulldozer ran over his left foot. Defendants are I. A. Mc-Cann, the owner and operator of the bulldozer; Fidelity & Casualty Company of New York, McCann’s liability insurer; and Mid-Gulf Construction, Inc., the general contractor on the project where the bulldozer was being used. Mid-Gulf filed a third party demand against McCann and Fidelity, seeking contribution or indemnity. Houston Fire & Casualty Company, the workmen’s compensation insurer of plaintiff’s employer, intervened to recover the compensation benefits which it had paid to plaintiff.
Judgment was rendered by the trial court dismissing plaintiff’s suit as to all defendants, dismissing Mid-Gulf’s third party action, and dismissing the demands of inter-venor. Plaintiff has appealed.
The issues are: (1) Was McCann negligent? (2) Was plaintiff guilty of contrib-tory negligence ? (3) Did McCann have the last clear chance to avoid the accident? (4) Was Mid-Gulf negligent in failing to provide plaintiff a safe place within which to work?
This accident occurred on January 30, 1970, at the site of a bridge construction project being conducted by the Louisiana Department of Highways, in Natchitoches Parish. Mid-Gulf, the general contractor, was engaged in placing dirt on the roadway which formed one of the approaches to the bridge. Two bulldozers, one of which was owned by defendant McCann, were being used to spread and to compact the dirt.
Plaintiff was employed by the Department of Highways as an “instrument man” in connection with this project. His duties were to test the compacted dirt with a “vo-lumeter” from time to time, to determine whether it had been packed well enough to allow another layer of dirt to be spread. The procedure used in making these tests was for the volumeter to be placed on the surface of the roadbed, and the instrument man and his assistant, among other things, took readings from that instrument. In performing those duties on the above mentioned job site it was necessary for plaintiff to get on his hands and knees on the roadbed, and at one point he had to lower his head, at least momentarily, to a point about six inches from the ground in order to read the calibration on the side of the instrument.
The accident which resulted in injuries to plaintiff occurred about 3 :00 P.M. on the above mentioned date. Plaintiff and his assistant, Terry Garland, were making a dirt compaction test at that time. Just before the accident occurred plaintiff was on his hands and knees in about the center of the roadbed at the point where the vo-lumeter had been placed. When it became necessary for him to lower his head to read the calibration on the side of that instrument, he rolled his body slightly to *444 his left and lowered his head, but in doing so he also extended his left leg straight to the rear. Immediately after he extended his leg in that manner, the right track of the bulldozer which was owned by defendant McCann backed over or on plaintiff’s left foot. McCann was operating the bulldozer at that time, and he brought it to a stop within three feet after it first rolled on plaintiff’s foot. As soon as it stopped, McCann caused the machine to roll forward far enough to be off Jordan’s foot. Plaintiff sustained injuries to his foot as a result of that accident.
The roadbed which was being worked on was about 150 feet long and 35 to 45 feet wide. Two bidldozers, one being owned and operated by McCann and the other being owned by Mid-Gulf, had been engaged since early that morning in spreading and packing the dirt which was being dumped on the roadway. McCann’s bulldozer was equipped with a blade, and he was using it to spread the dirt and to compact it to some degree with the tracks of that machine. To accomplish this, McCann caused his bulldozer to move forward and backward along the length of the roadbed. The bulldozer owned by Mid-Gulf was pulling a “sheeps foot,” nine to ten feet wide, which is designed and used for packing dirt. This combination of vehicles also was being moved forward and backward along the length of the roadbed.
Shortly before plaintiff began making the compaction test he had been on the bridge where he could view the construction site. He was aware of the fact that bulldozers were working in that area, and that if they continued to operate they would have to travel very close to him as he made his compaction test. Plaintiff and his assistant nevertheless left the bridge and proceeded to make a compaction test in about the center of the roadbed, without requesting that the bulldozers cease operating while the test was being made.
A period of from three to five minutes is required to make a compaction test. The evidence shows that the bulldozers would have been stopped while the test was being made if plaintiff or his assistant had requested that that be done.
No one informed McCann that a compaction test was to be made at that time, and no one asked him to stop his bulldozer or to operate it differently while such a test was being made. McCann stated that he would have shut down his spreading and packing operation while the test was being made if he had been asked to do so by plaintiff, or even if he had been told by the job superintendent that such a test was about to be made.
McCann was backing up his bulldozer at a speed of about five miles per hour when the accident occurred. He testified that it was necessary for him to travel close to plaintiff as he was making the test, that he observed Jordan on his hands and knees as the bulldozer approached, and that he saw plaintiff extend his left foot into the path of that machine when McCann was within a few feet of him. He stated that he attempted to stop the bulldozer as soon as he saw plaintiff extend his foot rearward, but that he was unable to bring it to a stop until the right track of the machine had rolled over plaintiff’s foot.
The trial judge did not assign reasons for judgment, but since plaintiff’s demands were rejected it is apparent that he concluded either that McCann was not negligent or that plaintiff was barred from recovery by his own contributory negligence.
We have concluded that plaintiff is barred from recovery because of contributory negligence, and that defendant Mc-Cann did not have the last clear chance to avoid the accident. In view of these findings, it is not necessary for us to determine whether McCann was negligent initially.
A person who leaves a place of safety and places himself in a position of known danger and is injured by one of the risks of which he has full knowledge, has assumed the risk of that danger and is guilty of contributory negligence. Romano v. Bonstaff, 198 So.2d 499 (La.App. 4th *445 Cir. 1967); Gantt v. Brown, 191 So.2d 793 (La.App.2nd Cir. 1966) ; Carter v. Travelers Insurance Company, 176 So.2d 176 (La. App. 4th Cir. 1965).
In the instant suit plaintiff was in a position of safety on the bridge before the accident occurred. From that position, he observed for several hours the forward and backward movement of the two bulldozers in spreading and packing dirt on one of the approaches to the bridge. He thus was well aware of the fact that these wide and heavy machines were being operated in the narrowly confined area where a compaction test was to be made. Despite that knowledge, he voluntarily proceeded to make the test in the center of the road where these machines were working, without requesting that the bulldozers cease operating and without taking any other precautions for his safety. While his back was toward McCann’s bulldozer, and without checking to see where this piece of road machinery was being operated at that moment, he suddenly extended his left foot directly into the path of the bulldozer. The machine being operated by McCann made a great deal of noise, and plaintiff has given no satisfactory explanation as to why he failed to notice that it was approaching very close to him.
We find that plaintiff was negligent in failing to request that the bulldozers cease operating while the compaction test was being made, and in suddenly extending his left leg rearward, directly in the path of the approaching bulldozer, when he knew or should have known that the machine was very close to him. We think his negligence in those respects constituted a proximate and contributing cause of the accident.
Plaintiff argues, however, that defendant McCann had the last clear chance to avoid the accident. In order for plaintiff to successfully invoke the doctrine of last clear chance he must show: (1) That he was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that defendant McCann actually discovered or should have discovered plaintiff’s peril before the accident occurred; and (3) that defendant, by the exercise of reasonable care, could have avoided the accident after he discovered or should have discovered the danger. Deo Gracias v. Collins, 236 So.2d 295 (La.App. 4th Cir. 1970); Sittig v. Allstate Insurance Company, 216 So.2d 692 (La. App. 3rd Cir. 1968); Moses v. Commercial Standard Insurance Company, 174 So.2d 682 (La.App. 3rd Cir. 1965).
McCann testified that he was maintaining a careful lookout as he operated his bulldozer, and that he saw plaintiff suddenly extend his foot into the path of that machine. He stated that he attempted to stop the bulldozer immediately after Jordan extended his foot rearward, or immediately after the danger was created, but that he was unable to do so.
There is some discrepancy in the testimony of witnesses as to how far the bulldozer was from plaintiff when the latter extended his foot to the rear. The estimates vary from the length of the machine to a distance of about three feet. We are unable to determine the exact distance the bulldozer was from plaintiff when the danger first became apparent, but we are convinced that McCann exercised reasonable care in attempting to bring his machine to> a stop immediately after plaintiff placed himself in a position of peril. We find, therefore, that McCann exercised reasonable care after the danger became apparent, but that he nevertheless was unable to stop his machine before it struck plaintiff. The evidence thus fails to establish at least one of the elements essential for invoking the doctrine of last clear chance.
Plaintiff argues, finally, that he is entitled to recover against Mid-Gulf because of the latter’s failure to provide him with a safe place in which to work. He relies largely on LSA-R.S. 23:13, and on Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4 Cir. 1970), to support that argument.
We think the evidence fails to show that Mid-Gulf, the general contractor on the job, owed such a duty to plaintiff. Plaintiff was an employee of the Louisiana Department of Highways, and his super *446 intendent on the job was Gordon Sandlin, another employee of that department. The work on this approach, and particularly the dirt testing work done by plaintiff, was being performed under the direction of that superintendent. The highway department is not a party defendant in this suit. Also, the evidence shows that plaintiff had the right to require that the bulldozer stop working while he made the compaction test, but that he elected to make that test while they continued to work. Mid-South and the highway department thus provided plaintiff with a measure of safety which he did not use.
Our conclusion is that plaintiff is barred from recovery because of his own contributory negligence, that defendant Mc-Cann did not have the last clear chance to avoid the accident, and that defendant Mid-South is not liable because of its alleged failure to provide plaintiff a safe place in which to work. We thus find no error in the judgment of the trial court.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.